STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GLAPION
2023 OK 29
Case Number: SCBD-7280
Decided: 03/28/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 29, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
RAPHAEL THOMAS GLAPION, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 The complainant, Oklahoma Bar Association, charged the respondent, Raphael Thomas Glapion, with one count of professional misconduct stemming from incompetent advice, failure to safekeep and timely account for a client's funds, failure to preserve evidence, and neglect and delay of the client's claims. The Professional Responsibility Tribunal recommended that the respondent be disbarred and costs imposed. Upon de novo review we hold that the respondent's license to practice law is suspended for two years and one day. The respondent is assessed costs in the sum of $1,731.28 for payment not later than ninety days after this opinion becomes final.

RESPONDENT SUSPENDED;
COSTS IMPOSED.

Katherine M. Ogden, Assistant General Counsel, Oklahoma Bar Association, for Complainant.

Raphael T. Glapion, Midwest City, Oklahoma, Pro Se.

KAUGER, J.:

¶1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Raphael Thomas Glapion (Glapion/attorney), with one count of professional misconduct resulting from the neglect and delay of a client's claims, failure to safeguard and timely account for the client's funds, failure to preserve evidence, and incompetent advice.

¶2 In its Complaint, the Bar Association sought discipline to be as the "Court finds equitable and proper."de novo review, we hold that the respondent's license to practice law should be suspended for two years and one day. The respondent is assessed the costs of this proceeding in the sum of $1,731.28 for payment not later than ninety days after this opinion becomes final.

FACTS

¶3 Glapion is currently a member of the Bar Association in good standing. This cause stems from a complaint to the Bar Association made by his client, LaClaudia Samuels (Samuels) in January of 2015, in conjunction with a professional malpractice case which Samuels filed in the Oklahoma County District Court against Glapion.

¶4 In 2014, Samuels was driving her rental car on a highway in Texas when Melissa May Pena (Pena) hit Samuels' car and caused her significant injuries. (Significant enough to preclude her from resuming her occupation as a computer server tech/installer.) Pena had been drinking at a bar, and was legally drunk when she caused the accident. The airbags in Samuels' rental car did not deploy, even though Pena was traveling at a high rate of speed when she hit Samuels. At the time of the accident, General Motors had issued a recall on the make and model of the car Samuels was driving due to malfunctioning airbags on impact.

¶5 In August of 2014, Samuels hired Glapion to represent her interest in claims against Pena, her insurer, the bar who served Pena, the rental car company, and General Motors. The contract for representation identified the defendants and potential claims. The defendants it expressly listed include Pena, GEICO, the bar, Budget Rental Car and General Motors. The claims it mentioned included negligence, dram shop violations, product liability, breach of contract/warranty and related claims.

¶6 The Contract for Professional Services, dated August 18, 2014, did not include any language regarding the respondent's representation of Samuels against her own uninsured/underinsured motorist coverage, ESURANCE. According to Samuels, this was because she had several years of experience dealing with insurance companies through her work in the medical industry and she could handle any claims against Esurance herself. She said she "primarily worked in health insurance." She "started out at Aetna, did a 13-week training program on how not to pay claims." Her "job wasn't to pay your claim, it was to look for any reason to deny your claims."

¶7 Fees for respondent's services were listed as: 37% of any gross amount recovered related to the claims; 40% if a pre-trial order is entered for recovery; and 45% of any recovery from a trial.

¶8 On September 24, 2014, GEICO tendered its policy limits of $30,000.00 on behalf of Pena. A portion of the funds went directly to some of Samuels' medical bills. The attorney retained $2,000.00 for legal fees.

¶9 Unfortunately, under Texas law, because Samuels settled and released the claims against Pena, Samuels was barred from pursuing against other contributory tortfeasors such as the bar who served Pena. The respondent did not advise Samuels of this ramification when she signed the GEICO release. Meanwhile, the attorney did nothing to preserve any airbag malfunction evidence, and he did not attempt to prevent the car from being destroyed. Consequently, this effectively precluded Samuels from pursuing a products liability claim against General Motors.

¶10 Because of her injuries, Samuels was unable to work, had outstanding medical bills, and needed additional medical treatment. She was eligible to apply for relief from the Texas Crime Victim's Fund, which would have helped with her lost wages. Samuels provided the attorney with information to submit the application, but he neglected to do so for six months. With the help of another attorney, Samuels was eventually able to collect some funds from the Texas Crime Victim's Fund.

¶11 On October 3, 2014, ESURANCE tendered its policy limits of $50,000.00 for the UM coverage. ESURANCE issued the check to the attorney. The attorney gave Samuels $20,000.00 that day, and then later, $2,500.00 and then an additional $4,200.00. The attorney kept $23,300.00 of the ESURANCE proceeds as his attorney fees. Over the next few months, Samuels disputed the respondent's keeping of the money and directed him to pay outstanding medical bills. The attorney's conduct contributed to Samuels' inability to get further necessary medical treatment, pay all of her medical bills, and to recover more eligible funds from the Texas Crime's Victim's Fund. The attorney also commingled the funds with his personal funds and offered no substantiated accounting as to where the money was used.

¶12 By October of 2014, the attorney withdrew from representing Samuels and directed her to contact a Texas lawyer to pursue the claims listed in his contract. This is when she learned that she was precluded from recovery by her GEICO waiver under Texas Law. Samuels sued Glapion for malpractice in the Oklahoma County District Court and the Court awarded her $831,478.47 in damages.

¶13 The Bar Association filed a Complaint with this Court on June 24, 2022, and the attorney responded on August 1, 2022, denying any wrongful conduct. The Professional Responsibility Tribunal (PRT) held a hearing on October 7, 2022 and filed its report with the Court on November 7, 2022. Although the Bar Association gave the attorney notice of the hearing, the attorney did not appear for it. The Bar Association called, left messages, and emailed him. After waiting the morning of the hearing for a response, the PRT finally started the hearing without him. After the hearing, the PRT recommended that the respondent be disbarred and assessed costs.

¶14 On November 7, 2022, the Bar Association requested that costs in the amount of $1,731.28 be assessed against Glapion. The Bar Association filed a brief on November 29, 2022, arguing that prior disciplinary proceedings of other attorneys support that the respondent should be suspended no less than two years and one day, and assessed costs. Glapion did not file a response brief.

THE ATTORNEY'S CONDUCT WARRANTS A 
SUSPENSION OF TWO YEARS AND ONE DAY FROM THE 
PRACTICE OF LAW AND THE ASSESSMENT OF COSTS.

¶15 This Court is the ultimate arbiter of appropriate sanctions in bar discipline.de novo in considering the record presented as well as the recommendations for discipline.

¶16 Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct.

¶17 We have reviewed the record, and the evidence shows that the attorney violated all of the Rules of Professional Conduct and Rules Governing Disciplinary Proceedings as alleged. Furthermore, the attorney did not participate in the trial proceedings, or briefing, or offer any mitigating evidence, other than denying the allegations in his response to the complaint.

¶18 In other attorney misconduct neglect cases, discipline has been dependant on the nature of neglect and the response from the attorney. When neglect occurs without affirmative acts of misconduct, a public censure or short suspension has been warranted.

¶19 We gave a neglectful attorney who did not cooperate with the Bar Association's investigation, and suffered from anxiety, but offered no supporting documentation, a one-year suspension in State ex rel. Oklahoma Bar Association v. Fields, 2021 OK 34489 P.3d 1016State ex rel. Hummel, 2004 OK 30

¶20 A two-year suspension was warranted in State ex rel. Oklahoma Bar Assciation v. Weigel, 2014 OK 4321 P.3d 168

¶21 State ex rel. Oklahoma Bar Assciation v. Jenkins, 2001 OK 5427 P.3d 91State ex rel. Oklahoma Bar Association v. McCoy, 2010 OK 67240 P.3d 675

¶22 The Bar Association likens Glapion's conduct to the attorneys involved in State ex rel. Oklahoma Bar Association v. Whitebook, 2010 OK 72242 P.3d 517State ex rel. Oklahoma Bar Association v. Watkins, 2019 OK 76461 P.3d 174State ex rel. Miller, 2020 OK 4461 P.3d 187Whitebook, the attorney was hired by two clients to handle the probate of estates. He took a retainer fee, and did not do any work. The attorney also disregarded the Court's authority by failing to appear at his hearing, as well as failures to respond to a grievance, appear for a deposition, to answer the complaint and failed to file a brief.

¶23 In Watkins, the attorney, who had been previously privately reprimanded, withdrew funds from his client's settlement funds and commingled them with his personal funds. He also ignored clients and delayed the case of a client whose wife was killed in an automobile accident. The Court suspended the attorney for two years and one day. In Miller, we disbarred an attorney who lied to her client about paying medical bills from a settlement, and neglected to timely file a client's case within the statute of limitations.

¶24 A lawyer who has been disciplined by a suspension of two year or less may resume practice upon the expiration of the period of suspension.

¶25 If the lawyer was disbarred, or resigned pending an investigation or disciplinary proceedings, that lawyer is not allowed to apply for reinstatement for at least five years.

¶26 Without doubt, this lawyer has committed acts of client neglect and has violated the public trust. While he initially participated in the disciplinary proceedings, he discontinued participation after filing an answer to the complaint. The attorney's conduct foreclosed the client from being able to pursue both dram shop liability claims as well as product liability claims, thus causing her to lose out on the potential recovery for her injuries. The circumstances of this cause require that the attorney be suspended for two years and one day and assessed the costs of this proceeding in the sum of $1,731.28.

CONCLUSION

¶27 The nondelegable, constitutional responsibility to regulate the practice and the ethics, licensure, and discipline of practitioners of the law is solely vested in this Court.de novo review of the record, we determine that the attorney's conduct warrants a two years and one day suspension, and the imposition of $1,731.28 in costs due not later than ninety days after this opinion becomes final.

RESPONDENT SUSPENDED;
COSTS IMPOSED.

Kane, C.J., Kauger, Winchester, Edmondson, Gurich, Darby, and Kuehn, JJ., concur;

Rowe, V.C.J., concurs in part; dissents in part;

Combs J., dissents.

Combs, J., dissenting:

"I would disbar the Respondent."

 

FOOTNOTES

The complaint shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth.

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

A lawyer shall act with reasonable diligence and promptness in representing a client.

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. . . .

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account but only in an amount necessary for that purpose.

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in connection with a representation, a lawyer possesses funds or other property in which both the lawyer and another person claim interests, the funds or other property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved, and the undisputed portion of the funds shall be promptly distributed.

(f) Where funds or other items of property entrusted to a lawyer have been impressed with a specific purpose as to their use, they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien. . . .

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

State ex rel. Oklahoma Bar Association v. Rennie, 1997 OK 108945 P.2d 494State ex rel. Oklahoma Bar Association v. Butler, 1992 OK 150848 P.2d 540

State ex rel. Oklahoma Bar Association v. Rennie, see note 11, supra; State ex rel. Oklahoma Bar Association v. Wilkins, 1995 OK 59898 P.2d 147

State ex rel. Oklahoma Bar Association v. Erickson, 2001 OK 6629 P.3d 550State ex rel. Oklahoma Bar Association v. Israel, 2001 OK 4225 P.3d 909

State ex rel. Oklahoma Bar Association v. Isreal, see note 13, supra; State ex rel. Oklahoma Bar Association v. Bolusky, 2001 OK 2623 P.3d 268State ex rel. Oklahoma Bar Association v. Dershem, 2001 OK 721 P.3d 639

State ex rel. Oklahoma Bar Association v. Patterson, 2001 OK 5128 P.3d 551State ex rel. Oklahoma Bar Association v. Eakin, 1995 OK 106State ex rel. Oklahoma Bar Association v. Bolton, 1994 OK 53880 P.2d 339

State ex rel. Oklahoma Bar Association v. Doris, 1999 OK 94991 P.2d 1015State ex rel. Oklahoma Bar Association v. Rozin, 1991 OK 132824 P.2d 1127

State ex rel. Oklahoma Bar Association v. Miskovsky, 1997 OK 55938 P.2d 744

State ex rel. Oklahoma Bar Association v. Southern, 2000 OK 8815 P.3d 1State ex rel. Oklahoma Bar Association v. Taylor, 2000 OK 354 P.3d 1242

State ex rel. Oklahoma Bar Association v. Brewer, 1999 OK 101998 P.2d 605State ex rel. Oklahoma Bar Association v. Green, 1997 OK 39936 P.2d 947State ex rel. Oklahoma Bar Association v. Benefield, 2002 OK 3751 P.3d 1198

State ex rel. Oklahoma Bar Association v. Denney, 1980 OK 143617 P.2d 1351State ex rel. Oklahoma Bar Association v. Robertson, 1980 OK 176620 P.2d 382

State ex rel. Hummel, 2004 OK 30

A lawyer who has been suspended for two (2) years or less upon disciplinary charges may resume practice upon the expiration of the period of suspension by filing with the Clerk of the Supreme Court an original and two (2) copies of an affidavit affirming that affiant has not engaged in the unauthorized practice of law or otherwise violated the rules of the Association or the terms of the affiant's order of suspension. The affidavit shall also describe all business or professional activities of the affiant and places of residence during the term of the suspension. No order of Court is necessary; however, material deletions or misrepresentations in the affidavit shall be grounds for subsequent discipline.

A copy of the affidavit shall be served on the General Counsel by the lawyer at the time of its filing, who may within sixty days file a separate disciplinary complaint with the Professional Responsibility Commission stating the lawyer during the suspension engaged in the unauthorized practice of law or other actions which would render the lawyer subject to discipline.

A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures:

(a) The applicant shall file an original and ten copies of a petition for reinstatement with the Clerk of the Supreme Court, and attach thereto (1) an affidavit showing all of the applicant's activities since the termination or suspension of his right to practice law and the applicant's place or places of residence since that date; and (2) the applicant's affidavit and the affidavits of the court clerks in the several counties in which he has resided, establishing that the applicant has not practiced law in their respective courts since the termination or suspension of his right to practice law. The applicant shall concurrently furnish a copy of said petition and all other documents filed with the Clerk of the Supreme Court to the General Counsel of the Oklahoma Bar Association. . . .

Rule 11.4, 5 O.S. 2021, Ch. 1, App.1--A, Rules of Disciplinary Proceedings provides:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

(e) The applicant shall not be permitted to file an application for reinstatement, after disbarment or resignation pending investigation or disciplinary proceedings, within five (5) years of the effective date of the order of the Court disbarring the applicant or accepting the resignation, nor shall any applicant be permitted to file an application for reinstatement within one (1) year after the Supreme Court has denied an earlier application.

At the conclusion of the hearing held on the petition for reinstatement, the Trial Panel of the Professional Responsibility Tribunal shall file a report with the Supreme Court, together with the transcript of the hearing. Said report shall contain specific findings upon each of the following:

(a) Whether or not the applicant possesses the good moral character which would entitle him to be admitted to the Oklahoma Bar Association;

(b) Whether or not the applicant has engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation;

(c) Whether or not the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma, except that any applicant whose membership in the Association has been suspended or terminated for a period of five (5) years or longer, or who has been disbarred, shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Provided, however, before the applicant shall be required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency. If the Trial Panel finds that such evidence is insufficient to establish the applicant's competency and learning in the law, it must require the applicant to take and pass the regular bar examination before a finding as to his qualifications shall be made in his favor.

In the Matter of the Reinstatement of Goforth, 2019 OK 1434 P.3d 944In the Matter of Reinstatement of Rickey, 2019 OK 36442 P.3d 571In re Reinstatement of Farrant, 2004 OK 77104 P.3d 567

State ex rel. Oklahoma Bar Association v. Holden, 1995 OK 25895 P.2d 707State ex rel. Oklahoma Bar Association v. Farrant, 1994 OK 13867 P.2d 1279Tweedy v. Oklahoma Bar Association, 1981 OK 12624 P.2d 1049

State ex rel. Oklahoma Bar Association v. Raskin, 1982 OK 39642 P.2d 262